# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTEEN FOOTE, | No. 1:16-cv-03098-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL | |
| SECURITY, | ECF Nos. 20, 21 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 20, 21. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 20) and grants Defendant's motion (ECF No. 21).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on February 20, 2007, alleging an amended disability onset date also of February 20, 2007.  Tr. 52-53 (amending onset date); Tr. 217-20 (Title XVI application).[1]  The application was denied initially, Tr. 135-38, and on reconsideration.  Tr. 139-41.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on February 24, 2015.  Tr. 1097-1177.  The ALJ conducted a supplemental hearing on June 25, 2015.  Tr. 1123-60.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after the application date, February 20, 2007.  Tr. 1066.  At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease, status post fusion surgery; thoracic and lumbar spine

---

[1] A prior hearing was held August 20, 2009, Tr. 51-74, and Plaintiff's claim was denied October 2, 2009, Tr. 121-30.  The case was remanded by the Appeals Council and another hearing was held January 10, 2012.  Tr. 77-113.  The claim was denied February 8, 2012, Tr. 20-33, and the district court ordered remand, Tr. 1197-1211.  Another hearing was held and resulted in the decision that is the basis of this appeal.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

degenerative disc disease; status post left side carpal tunnel surgery; and status post left foot surgeries. Tr. 1066. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 1072. The ALJ then concluded that Plaintiff has the RFC to perform a range of light work with the following qualifications and limitations:

> the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except she cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently finger, handle, and feel. She should avoid concentrated exposure to extreme cold, heat, vibration, pulmonary irritants, and workplace hazards. She is limited to simple, routine, unskilled tasks.

Tr. 1072-73.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 1083. At step five, relying on a vocational expert's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as pricing marker, fast food worker, package sorter, and photocopy machine operator. Tr. 1084. Thus, the ALJ concluded Plaintiff has not been under a disability since February 20, 2007, the date the application was filed. Tr. 1085.

Following the ALJ's decision, the Appeals Council denied review,[2] making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 20. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical evidence;

2. Whether the ALJ properly weighed the lay testimony;

3. Whether the ALJ made a proper step two determination;

4. Whether the ALJ properly found Plaintiff did not meet Listing 1.04;

5. Whether the ALJ properly discredited Plaintiff's symptom claims;

6. Whether the ALJ properly refused to recuse herself; and

7. Whether the ALJ held a full and fair hearing.

ECF No. 20 at 5-6.

---

[2] The Appeals Council's current denial of review following the ALJ's March 25, 2016 decision is not in the record. As the parties raise no challenge to the omission, the Court declines to address it further.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

**ARGUMENT**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinions of (1) examining physician Dr. Pellicer in November 2014; (2) treating physician Dr. Schmitt between July 2009 and October 2015; (3) treating physician Dr. Anderson in April 2007; (4) treating physician Dr. Friedman in December 2014; (5) treating physical therapist Mr. Pigeon in December 2010 and June 2015; and (6) treating physicians Dr. Heit and Dr. Holden in 2013. ECF No. 20 at 6-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–83 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939, at *2; 20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*

*v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### 1. Dr. Pellicer

Plaintiff contends the ALJ improperly rejected the November 2014 opinion of examining physician Mary Pellicer, M.D.  ECF No. 20 at 6-9.  Dr. Pellicer observed that Plaintiff gave a positive straight-leg raise test, walked slowly with a limp, and had reduced range of motion.  Tr. 1083 (citing Tr. 1427, 1430).  Dr. Pellicer opined that Plaintiff could occasionally lift or carry up to five pounds, could only sit, stand, or walk 10 minutes at a time, and needed to lie down for two hours during the day.  Tr. 1419-20.  She also opined Plaintiff could only occasionally handle due to right arm and hand pain.  Tr. 1431.  The ALJ gave this opinion little weight.  Tr. 1083.  Because Dr. Pellicer's opinion was contradicted by reviewing Dr. Turner[3] and Dr. Shors, the ALJ was required to provide specific

---

[3] On February 18, 2008, reviewing physician Guthrie Turner, M.D., opined Plaintiff could perform light work with some limitations.  Tr. 1080 (citing Tr. 394-400, 560).  The ALJ generally accepted this opinion as consistent with the medical evidence overall, except that the ALJ rejected Dr. Turner's limitation to only occasionally reaching overhead and pushing/pulling with the right upper extremity

and legitimate reasons for discounting Dr. Pellicer's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Pellicer's November 2014 opinion was inconsistent with other evidence in the record. Tr. 1079, 1083. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

The ALJ found that Dr. Pellicer's opinion was contradicted by the objective findings found by treating hand surgeon Heidi Shors, M.D. Tr. 1079. An ALJ may discredit a physician's opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Generally, a treating physician's opinion carries more weight than an examining physician's. *Holohan*, 246 F.3d at 1202. Here, the ALJ found that Dr. Pellicer's opinion was contradicted by Dr. Shors' objective findings in August 2014 and January 2015 – findings that were roughly contemporaneous with Dr. Pellicer's exam. Tr. 1079 (citing Tr. 1631-32) (in January 2015, Dr.

due to right shoulder impairment and myofascial pain. Tr. 1080 (citing Tr. 394-400, 560).

Shors noted nerve studies showed no significant carpal tunnel on the right); (citing Tr. 1425-26) (in November 2014, Plaintiff told Dr. Pellicer she had ongoing pain in her right upper extremity and pain and weakness in both hands). The ALJ found, as another example, that in August 2014, Dr. Shors noted Plaintiff had full range of motion; Dr. Shors noted full flexion and full extension bilaterally without restriction. Tr. 1079 (citing Tr. 1634). As another example, the ALJ found Dr. Pellicer noted Plaintiff was slow and clumsy when picking up coins from a flat surface with her right hand, required multiple attempts, and reported that this increased pain in her right hand, Tr. 1079 (citing Tr. 1430), but this was inconsistent with Dr. Shors' objective findings that diagnostic nerve studies showed no significant carpal tunnel on the right. Tr. 1079 (citing Tr. 1632). As another example, the ALJ found Dr. Pellicer noted Plaintiff sat leaning forward with her weight on her elbows, Tr. 1079 (citing Tr. 1427), but this posture is not reflected in Dr. Shors' treatment notes or in the CDIU[4] interview. Tr. 1079 (citing Tr. 1631-32, 1634) (Dr. Shors does not mention forward leaning posture); (citing

_____

[4]CDIU stands for Cooperative Disability Investigations Unit. A report was transmitted February 10, 2015, after referral by the Seattle Office of Disability Adjudication and Review (ODAR) found inconsistencies in Plaintiff's allegations and presentations throughout the file, and an investigation ensued. Tr. 1359.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

Tr. 1366) (the CDIU investigator stated that Plaintiff stood and sat "naturally and fluidly on multiple occasions."). This was a specific, legitimate reason to give limited weight to Dr. Pellicer's opinion.

Next, the ALJ discounted Dr. Pellicer's opinion because she relied on Plaintiff's own symptom testimony, which the ALJ found not to be credible. Tr. 1083. A physician's opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 604 (9th Cir. 1999); *Fair v, Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ discounted Dr. Pellicer's recorded clinical findings because most of them were based on Plaintiff's report of pain (e.g., tenderness and reduced range of motion). Tr. 1083 (citing Tr. 1428) (reported right mid back tender "as is her entire spine from the low back cervical to the lumbar region," and noting low back tender across the muscles of buttocks). The ALJ further noted Dr. Pellicer examined Plaintiff only once and reviewed no treating records. Tr. 1083. Here, given the ALJ's conclusion that Dr. Pellicer did not rely on adequate objective medical evidence to form her opinion, she necessarily would have had to rely on subjective symptom testimony to form her opinion. To the extent Dr. Pellicer did rely on Plaintiff's self-reported symptoms to form her opinion, it was not error for the ALJ to reject her opinion on that basis.

1    This was a specific, legitimate reason to give Dr. Pellicer's opinion limited

2    weight.

3        Plaintiff cites other medical evidence she alleges contradicts the ALJ's

4    reasons for discrediting Dr. Pellicer's opinion.  ECF No. 20 at 9.  For example,

5    Plaintiff cites Tr. 439 (abnormal gait is noted in December 2007) and Tr. 1620

6    (bilateral positive Tinel's test) as evidence the ALJ should have relied on in

7    crediting Dr. Pellicer's opinion.  This contention alleges that the ALJ should have

8    weighed the evidence differently, but the ALJ is responsible for reviewing the

9    evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v.*

10   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If there is substantial evidence to

11   support the administrative findings, or if there is conflicting evidence that will

12   support a finding of either disability or nondisability, the finding of the

13   Commissioner is conclusive.  *Sprague*, 812 F.2d at 1229-30.  Here, substantial

14   evidence supports the ALJ's reasons to give limited weight to Dr. Pellicer's

15   opinion.

16       *2. Dr. Schmitt*

17       Next, Plaintiff contends the ALJ improperly discredited several opinions by

18   treating physician Paul Schmitt, M.D.  ECF No. 20 at 9-12.  Because Dr. Schmitt's

19   opinions were controverted in part by Dr. Turner, the ALJ was required to provide

20

specific and legitimate reasons to reject them. *Bayliss*, 427 F.3d at 1216. The ALJ gave these opinions little weight. Tr. 1081.

In July 2009, Dr. Schmitt opined Plaintiff was not employable in her past work as a paralegal due to an inability to sit or type, due to her pain; he also opined that medication would interfere with Plaintiff's mental functioning. Tr. 1081 (citing Tr. 692). The ALJ rejected this opinion because Dr. Schmitt's treatment notes do not contain findings that support these limitations. Tr. 1081. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). In May 2009, for example, Dr. Schmitt noted Plaintiff complained of increasing symptoms of neck pain, increasing low back pain, and is "getting weaker in the lower extremities." Tr. 694. However, Dr. Schmitt's treatment notes and the record as a whole do not support his assessed limitations. *See, e.g.*, Tr. 1722 (October 2012 lumbar MRI showed no significant narrowing). In addition, in March 2013, Plaintiff told Dr. Schmitt her fibromyalgia symptoms were much improved with medication. Tr. 1608. In May 2013, Dr. Schmitt found Plaintiff's upper extremities moved

normally.  Tr. 1605.  In October 2013, Dr. Schmitt opined fibromyalgia symptoms were stable.  Tr. 1587.  In August 2014, treating physician Dr. Shors found full range of motion in wrists.  Tr. 1634.  In December 2014, a cervical MRI scan did not show a clear nerve root compression.  Tr. 1633.  The ALJ is correct that there are no supporting exam findings; instead, Dr. Schmitt lists Plaintiff's unreliable description of symptoms.  Tr. 1081.  This was a specific, legitimate reason to give Dr. Schmitt's opinion limited weight.

Next, the ALJ rejected Dr. Schmitt's 2009 opinion because the record in general also does not contain findings consistent with the opinion.  Tr. 1081.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole or by objective findings.  *Batson*, 359 F.3d at 1195.  The ALJ found, for example, that the findings of other treating physicians contradicted Dr. Schmitt's opinion.  Tr. 1081 (citing Tr. 1612-1728); *see, e.g.*, Tr. 1613 (in June 2013, treating physician Zornitza Stoilova, M.D., reviewed an October 2012 lumbar MRI that revealed no significant central canal or neural foraminal stenosis; further, no definitive etiology for right L5 radiculopathy was evident); Tr. 1634 (Dr. Shors noted full range of motion in wrists); Tr. 1632 (Dr. Shors opined that working would help Plaintiff's hands).  Similarly, in January 2015, Dr. Shors found that diagnostic nerve studies showed no significant carpal tunnel on the right.  Tr. 1079

(citing Tr. 1632).  This was a specific, legitimate reason to give Dr. Schmitt's opinions limited weight.

The ALJ further found that the lack of objective findings suggested that Dr. Schmitt relied primarily on Plaintiff's less than credible self-report.  Tr. 1081.  A physician's opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan,* 169 F.3d at 604; *Fair*, 885 F.2d at 604.  Here, Dr. Schmitt included reports of Plaintiff's self-reported symptoms in his medical records.  *See, e.g*., Tr. 694 ("she has increasing symptoms of neck pain").  Furthermore, given the ALJ's conclusion that Dr. Schmitt did not rely on adequate objective medical evidence to form his opinion, he necessarily would have had to rely on subjective symptom testimony to form his opinion.  To the extent Dr. Schmitt did rely on Plaintiff's self-reported symptoms to form his opinion, this was a specific and legitimate reason to discredit his opinion.

The ALJ additionally rejected Dr. Schmitt's opinion that Plaintiff is not employable as a paralegal due to her inability to type.  Tr. 1081 (citing Tr. 692).  The ALJ opined that an inability to type would not preclude all work, and rejected Dr. Schmitt's opinion on that basis.  Tr. 1081.  To find a claimant disabled, an ALJ is required to find that a claimant is unable to engage in any substantial gainful activity.  *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  The ALJ is correct that

many types of work do not require this ability. This was a specific, legitimate reason to give limited weight to Dr. Schmitt's opinion.

Next, the ALJ rejected Dr. Schmitt's conclusion that Plaintiff is unable to work because, rather than a clear medical opinion, the ALJ found it is a legal conclusion reserved exclusively to the Commissioner. Tr. 1081 (citing 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1)). "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). The ALJ rejected Dr. Schmitt's opinion that Plaintiff is disabled because this is a legal rather than medical opinion.

However, a medical opinion of disability may not be disregarded simply because it addresses disability; rather, a medical conclusion of disability may have value when it is specifically supported. *Aaron v. Astrue*, 2008 WL 4502268, at *7 (E.D. Cal. Oct. 7, 2008) ("It is true that the ultimate issue of disability *vel non* is reserved to the Commissioner because a determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner"). *Aaron* noted that such a conclusion has value only when the physician supported the conclusion by addressing "the specific extent of a claimant's exertional capacity, precisely limited the maximum hours to be worked, specified the requirement of elevating the legs for precise periods of time, and set forth specific postural limitations." *Fabilla v. Astrue*, 2012 WL 3985140, at *4

(E.D. Cal. Sept. 11, 1012) (citing *Aaron*, 2008 WL 4502268, at *7). Here, Dr.

Schmitt failed to support his conclusion that Plaintiff is disabled by addressing, for

example, the extent of Plaintiff's exertional capacity or the existence of any

postural limitations. Because Dr. Schmitt's disability conclusion was unsupported,

the ALJ was entitled to reject it as an opinion reserved to the Commissioner. This

was a specific, legitimate reason to give limited weight to Dr. Schmitt's opinion.

The ALJ discredited Dr. Schmitt's 2011 and 2015 opinions because there are

no accompanying objective findings that are consistent with the dire limitations

assessed. An ALJ may discredit physicians' opinions that are unsupported by the

record as a whole or by objective medical findings. *Batson,* 359 F.3d at 1195. In

December 2011, Dr. Schmitt opined Plaintiff would miss more than four days of

work a month and would need to lie down during the day due to pain. Tr. 1081

(citing Tr. 935-36). The ALJ further noted that in February 2015, Dr. Schmitt

opined Plaintiff was severely limited due to pain, again would miss more than four

days of work each month, and would have to lie down for 30 minutes two to three

times a day. Tr. 1081 (citing Tr. 1489). The ALJ found these opinions were

controverted by the medical record as a whole, specifically by MRI results. Tr.

1081. The ALJ rejected both opinions because, again, there are no accompanying

objective findings that are consistent with the limitations assessed. Tr. 1081; *see*

Tr. 1722 (lumbar MRI showed no significant narrowing); Tr. 1632 (Dr. Shors

opined working would help, not hurt, Plaintiff's hands); Tr. 1634 (Dr. Shors noted full range of motion in wrists); Tr. 1637 (in August 2014 PAC Mr. Patzer opined that Plaintiff's left hand strength was 5/5). This was a specific, legitimate reason to give limited weight to Dr. Schmitt's opinions.

In addition, the ALJ found that because Dr. Schmitt's later opinions were also not supported by objective findings, he must have relied at least in part on Plaintiff's unreliable self-report. Tr. 1081. A physician's opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149. Given the ALJ's conclusion that Dr. Schmitt did not rely on adequate objective medical evidence to form his opinion, he necessarily would have had to rely on Plaintiff's self-reported symptoms to form his opinion. It was not error for the ALJ to reject his opinion on that basis.

The ALJ additionally rejected Dr. Schmitt's opinions because at least some of his assessed limitations were predicated on a diagnosis of fibromyalgia, and the ALJ found that was not a medically determinable impairment. Tr. 1081 (citing *e.g.,* Tr. 1488) (Dr. Schmitt noted a diagnosis of fibromyalgia). An ALJ need not presume that a diagnosis or medically determinable impairment equates to work-related limitations. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the mere diagnosis of an impairment . . .is not sufficient to sustain a finding of disability."). The ALJ found that the medical evidence, including objective

findings, did not establish that fibromyalgia was a medically determinable impairment. Tr. 1070, 1081. An ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Here, the ALJ found that Dr. Schmitt failed to record specific tender point findings or other evidence to substantiate this diagnosis. Tr. 1070 (citing Tr. 353, 792). In addition, the ALJ found that rheumatologist Stanford Peng, M.D., seemed to rule out a fibromyalgia diagnosis because he noted only minimal tender points and made no mention of a fibromyalgia diagnosis. Tr. 1070 (citing Tr. 1668, 1679). The ALJ further found that, although Jeffrey Carlin, M.D., indicated a fibromyalgia diagnosis, he was merely adopting Dr. Friedman's diagnosis. Tr. 1070 (citing Tr. 1638-39). Most importantly, neither Dr. Carlin nor Dr. Friedman recorded the requisite findings to substantiate the diagnosis, and treating physician Andrew Friedman, M.D., specifically stated that he did not see the diagnostic criteria for fibromyalgia. Tr. 1070 (citing Tr. 508). Moreover, the ALJ found that Dr. Schmitt himself correctly indicated that Plaintiff's examination findings did not meet the diagnostic criteria for fibromyalgia.[5] Tr. 1070 (citing Tr.

---

[5] In addition, the ALJ found that the record does not contain the diagnostic criteria for fibromyalgia listed in S.S.R. 12-2p, which went into effect on July 25, 2012. Nor does the record show, the ALJ found, the specific tender point findings

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1537).  Because Plaintiff failed to establish that fibromyalgia was a medically

determinable impairment, the ALJ was not required to accept Dr. Schmitt's

assessed limitations based on that condition.  The ALJ provided another specific,

legitimate reason to give Dr. Schmitt's opinions little weight.

The ALJ rejected Dr. Schmitt's opinions in August 2012, June 2015, and

October 2015 that Plaintiff was disabled by chronic pain or fibromyalgia or both.

Tr. 1082 (citing Tr. 1519, 1729, 1744).  Dr. Schmitt opined in August 2012 that

Plaintiff could not work due to chronic pain and fibromyalgia.  Tr. 1082 (citing Tr.

1519).  Similarly, in June 2015, Dr. Schmitt opined Plaintiff was permanently

disabled due to chronic pain.  Tr. 1082 (citing Tr. 1729).  And, in October 2015,

the ALJ found Dr. Schmitt again opined that Plaintiff was disabled.  Tr. 1082

(citing Tr. 1744).  The ALJ rejected these opinions because, again, they stated a

legal conclusion reserved to the Commissioner, they were partially predicated on a

diagnosis of fibromyalgia, which the ALJ found was not a medically determinable

impairment, and Dr. Schmitt's treatment notes do not contain objective findings

consistent with his assessed inability to perform any work.  Tr. 1082 (citing *e.g.,*

Tr. 1552) (in January 2015, Dr. Schmitt noted Plaintiff says she is more active than

required to establish a fibromyalgia diagnosis prior to July 25, 2012.  Tr. 1070 at

n.3.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

in past years and has grandchildren in her home now). For the reasons previously articulated, the ALJ provided specific, legitimate reasons to give limited weight to Dr. Schmitt's opinions.

In addition, importantly, the ALJ rejected Dr. Schmitt's assessed severe limitations because they were inconsistent with Plaintiff's reported actual activities. Tr. 1077-79, 1081. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ found Plaintiff's functioning was inconsistent with Dr. Schmitt's opinions. Tr. 1077-79, 1081 (citing Tr. 1365-67). For example, Plaintiff told the CDIU investigator in February 2015 she could drive herself anywhere she wanted to go, she gave rides to friends and to her teenage son and his friends; moreover, Plaintiff reported that she drove to nearby towns for shopping and medical visits. In addition, Plaintiff reported she homeschooled her son, shopped, cooked, paid bills, and did light housework. Tr. 1078 (citing Tr. 248-49). Further, Plaintiff stated she could walk a mile, and reported that she went on a one-mile hiking trip. Tr. 1078 (citing Tr. 571, 928). This was a specific, legitimate reason to give limited weight to Dr. Schmitt's opinions.

*3. Dr. Anderson*

Plaintiff alleges the ALJ failed to properly credit the April 2007 opinion of treating physician John Anderson, M.D. ECF No. 20 at 12-13. Dr. Anderson

opined Plaintiff would require continuous flexibility of position, needed to avoid any sort of physical exertion, and "probably IS indeed disabled for employment." Tr. 1081 (citing Tr. 353). The ALJ gave this opinion little weight. Tr. 1081. Because Dr. Anderson's opinion was contradicted by Dr. Turner and Dr. Shors, the ALJ was required to provide specific and legitimate reasons to reject it. *Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected this opinion because, rather than a clear medical opinion, it is equivocal ("probably" disabled). An ALJ is not required to accept an equivocal opinion of disability. *See Mitchell v. Astrue*, 2010 WL 1486475, at *9 (C.D. Cal. March 3, 2010) (an ALJ may properly discredit a treating physician's finding for being equivocal, unsupported by clinical findings, and contradictory to the physician's own previous findings) (citing *Batson*, 359 F.3d at 1195). Dr. Anderson's opinion Plaintiff "probably" is disabled is equivocal rather than definitive. Tr. 353. This was a specific, legitimate reason to give limited weight to Dr. Anderson's opinion.

Second, the ALJ rejected Dr. Anderson's disability opinion because it is a legal conclusion rather than a medical opinion. Tr. 1081 (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927 (e)(1)). As noted, the legal conclusion of disability, is reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved

to the Commissioner. . .”); *Aaron*, 2008 WL 4502268, at *7 (E.D. Cal. Oct. 7, 2008) (“It is true that the ultimate issue of disability *vel non* is reserved to the Commissioner because a determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner”). *Aaron* noted that such a conclusion has value only when the physician supports the conclusion by addressing with specificity the extent of Plaintiff’s exertional capacity, the maximum hours to be worked, if applicable, the requirement of elevating the legs for precise periods of time, and any postural limitations. *See Fabilla*, 2012 WL 3985140, at *4 (E.D. Cal. Sept. 11, 2012) (citing *Aaron,* 2008 WL 4502268, at *7.).

Here, Dr. Anderson did not provide any opinions regarding Plaintiff’s functional limitations, other than requiring “continuous flexibility of position and avoidance of any sort of physical exertion.” Tr. 349. This supports the ALJ’s finding that Dr. Anderson rendered a legal conclusion of disability that is exclusively reserved to the Commissioner; and, significantly, the conclusion is of limited value because Dr. Anderson failed to support the conclusion by assessing Plaintiff’s limitations with requisite specificity. For example, Dr. Anderson’s opinion makes no reference to Plaintiff’s exertional capacity, the maximum hours Plaintiff can work, or Plaintiff’s postural limitations. Accordingly, Dr. Anderson’s equivocal statement that Plaintiff probably is disabled, unsupported by his opinion

of specific functional abilities, was properly discounted by the ALJ, and the ALJ's

rejection of the opinion as an unsupported opinion of disability (a determination

reserved to the Commissioner),was also a specific, legitimate reason to give

limited weight to Dr. Anderson's opinion.  Plaintiff contends the ALJ was required

to incorporate Dr. Anderson's assessed limitations in the RFC, but this argument

fails because the ALJ properly weighed the opinion.

### 4. Dr. Friedman

Plaintiff faults the ALJ for failing to credit the December 2014 opinion of

treating physician Andrew Friedman, M.D.  ECF No. 20 at 13-14.  Dr. Friedman

treated Plaintiff for pain.  He opined Plaintiff was limited to less than sedentary

work and would miss more than four days of work each month.  Tr. 1082 (citing

Tr. 1481).  The ALJ gave this opinion little weight.  Tr. 1080, 1082-83.  Because

Dr. Friedman's opinion was contradicted in part by Dr. Turner, the ALJ was

required to provide specific and legitimate reasons supported by substantial

evidence to reject it.  *Bayliss,* 427 F.3d at 1216.

The ALJ rejected this opinion, first, because Dr. Friedman did not provide a

completed evaluation with objective findings consistent with the assessed

limitations.  Tr. 1082.  An ALJ may discredit physicians' opinions that are

unsupported by the record as a whole or by objective medical findings.  *Batson,*

359 F.3d at 1195.  The ALJ is correct that Dr. Friedman did not support his

assessment with objective findings.  This was a specific, legitimate reason to give limited weight to Dr. Friedman's opinion.

Second, the ALJ rejected Dr. Friedman's opinion because it appeared to be largely based on Plaintiff's unreliable self-report.  Tr. 1082.  A physician's opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan,* 169 F.3d at 604; *Fair*, 885 F.2d at 604.  Here, the ALJ found Dr. Friedman assessed an RFC for less than sedentary work and noted that Plaintiff "has not functioned well in a long time, and does not cope well with pain." Tr. 1082 (citing Tr. 1481).  These statements to Dr. Friedman, presumably by Plaintiff, indicate Dr. Friedman likely relied at least in part on Plaintiff's unreliable statements when he formed his medical opinion.  This was a specific, legitimate reason to give Dr. Friedman's opinion limited weight.

Third, the ALJ rejected Dr. Friedman's opinion because it is unsupported by other evidence, including objective findings, in the record.  Tr. 1082.  An ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole or by clinical findings.  *Batson*, 359 F.3d at 1195.  Here, the ALJ found Dr. Friedman stated that MRI findings do not show a clear nerve root compression to explain Plaintiff's "reported upper right extremity pain," which was Plaintiff's primary complaint.  Tr. 1082 (citing Tr. 1480, 1633).  In addition, Dr. Friedman

further opined Plaintiff was going to undergo a rheumatology evaluation to find the cause of her reported pain. Tr. 1082 (citing Tr. 1480). Dr. Friedman noted objective findings did not explain Plaintiff's primary complaint and further testing was needed. This was a specific, legitimate reason to give limited weight to Dr. Friedman's opinion.

Furthermore, given the ALJ's conclusion that Dr. Friedman did not rely on adequate objective medical evidence to form his opinion, he necessarily would have had to rely on subjective symptom testimony to form his opinion. This was a specific, legitimate reason to give limited weight to Dr. Friedman's opinion. To the extent Dr. Friedman did rely on Plaintiff's self-reported symptoms to form his opinion, it was not error for the ALJ to reject his opinion on that basis.

*5. Mr. Pigeon*

Treating physical therapist Craig Pigeon, P.T., opined Plaintiff was limited due to pain. Tr. 912. In December 2010, Mr. Pigeon opined Plaintiff was limited to less than sedentary work due to complaints of low back and neck pain, with pain in the upper and lower extremities. Tr. 1083 (citing Tr. 912). The ALJ gave this opinion little weight. Tr. 1083. Because Mr. Pigeon is an "other source" as defined in 20 C.F.R. § 416.913(d), the ALJ was required to provide germane reasons for rejecting Mr. Pigeon's opinion. *Molina,* 674 F.3d at 1111.

The ALJ concluded that the objective medical findings do not support Mr.

Pigeon's opinion. Tr. 1083. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Here, Mr. Pigeon's opinion was controverted by the medical record as a whole. As an example, a negative cervical MRI scan did not show a clear nerve root compression. Tr. 1633. As another example, a lumbar MRI showed no significant narrowing. Tr. 1722. In addition, treating physician Dr. Shors found that diagnostic nerve studies showed no significant carpal tunnel on the right; further, she opined working would help Plaintiff's hands. Tr. 1632. The ALJ gave a germane reason for rejecting Mr. Pigeon's opinion.

In June 2015, Mr. Pigeon opined Plaintiff was limited due to pain in both hands, upper extremity pain and weakness, and neck and back pain. Tr. 1083 (citing Tr. 1742-43). Mr. Pigeon opined Plaintiff demonstrated notably reduced strength in her left hand during the evaluation. Tr. 1083 (citing Tr. 1743). The ALJ gave this opinion little weight. Tr. 1083.

First, the ALJ found because there was evidence Plaintiff exaggerated her complaints, Mr. Pigeon's opinion was less reliable. Tr. 1083. An opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted. *See Tonapetyan*, 242 F.3d at 1149. Here, to the extent the ALJ found Mr. Pigeon's opinion was premised on Plaintiff's unreliable complaints, the ALJ gave a germane reason for rejecting Mr. Pigeon's 2015 opinion.

In addition, and more importantly, the ALJ found Mr. Pigeon's opinion was contradicted by other medical providers. Tr. 1083. An ALJ may discredit opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Here, the ALJ found Mr. Pigeon's 2015 opinion was contradicted by that of an acceptable medical source, treating hand surgeon Dr. Shors. Tr. 1083 (citing Tr. 1631-32, 1634) (Dr. Shors noted no left hand weakness). The ALJ also found Mr. Pigeon's opinion was contradicted by another treating source. Tr. 1083 (citing Tr. 1637) (treatment provider PAC Mr. Patzer opined in August 2014 that Plaintiff's left hand strength was 5/5). Moreover, the ALJ found Dr. Shors opined in January 2015 that Plaintiff could return to see her as needed, but Plaintiff did not do so, suggesting Plaintiff's hand condition did not worsen as described by Mr. Pigeon. Tr. 1083 (citing Tr. 1632) (Dr. Shors indicated Plaintiff will follow up as needed). These were germane reasons to give limited weight to Mr. Pigeon's opinion.

### 6. Dr. Heit and Dr. Holden

Plaintiff contends the ALJ misattributed the December 2011 opinion of treating podiatrist Curtis Holden, D.P.M., to another treating podiatrist, Eric Heit, D.P.M. ECF No. 20 at 15-16 (citing Tr. 1080). In discussing this opinion, the ALJ cited Tr. 1045-46, which is in fact Dr. Holden's, not Dr. Heit's, opinion. Tr. 1080. The ALJ gave significant weight to "Dr. Heit's" opinion that Plaintiff's left foot

impairment would cause little to no functional impairment.  Tr. 1080.  This opinion is essentially uncontradicted.  In general, if a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss,* 427 F.3d at 1216.  Plaintiff is correct that the ALJ erroneously attributed this opinion by Dr. Holden to Dr. Heit.  Plaintiff contends the ALJ should have relied instead on the later opinions and records of Dr. Heit where he found that Plaintiff suffered from various foot disorders.  ECF No. 20 at 15 (citing Tr. 1627 in 2012 and Tr. 1676, 1678 in 2013).

However, these records do not establish severe impairments and therefore they do not contradict Dr. Holden's 2011 opinion, rendering any error harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate disability conclusion).

In October 2012, Dr. Heit noted *possible* symptomatic neuroma of the left foot and metatarsalgia secondary to a surgically shortened hallux, and prescribed orthotics (emphasis added).  Tr. 1627.  In February 2013, Dr. Heit assessed capsulitis of the first metatarsophalangeal joint on the right and gave Plaintiff an injection.  Tr. 1678.  Two months later, in April 2013, he made the same diagnosis and again gave Plaintiff an injection.  Tr. 1676.  Conditions effectively controlled

with medication are not debilitating for purposes of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Because Plaintiff fails to establish that these were severe impairments that lasted the requisite twelve months, the ALJ was not required to find that they caused any severe limitations. As Dr. Heit's later records did not refute Dr. Holden's 2011 opinion, the ALJ was not required to reject Dr. Holden's 2011 opinion.

## B. Lay Witness Testimony

Plaintiff contends the ALJ failed to provide germane reasons for rejecting lay testimony. ECF No. 20 at 16.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Molina*, 674 F. 3d at 1114 (citing *Ngyuen,* 100 F.3d at 1467; *Dodrill,* 12 F.3d 915 at 919). As the *Molina* court noted, competent lay witness testimony "*cannot* be disregarded without comment," *Nguyen*, 100 F.3d at 1467, and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill,* 12 F.3d at 919. *Molina,* 674 F.3d at 1114.

The Court has not, however, required the ALJ to discuss every witness's testimony on a individualized, witness-by-witness basis. *Molina*, 674 F.3d at 1114. Rather, if the ALJ gives germane reasons for rejecting testimony by one

witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.). The applicable regulations are in accord, as they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, *see* 20 C.F.R. § 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness, *see id.; see also* SSR 06–03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"). *Molina*, 674 F.3d at 1114.

Here, the ALJ's reason is germane and supported by the record.

The ALJ found that the third party statements generally reflect the same allegations made by Plaintiff, and, as noted, the ALJ found Plaintiff's allegations are not credible. Tr. 1083. If an ALJ gave reasons for rejecting a claimant's testimony regarding symptoms that were equally relevant to the similar testimony of the lay witnesses, that would support a finding that the lay testimony was similarly not credible. *Molina,* 674 F.3d at 1114-15. For example, the ALJ

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

considered the December 2007 statement of Plaintiff's significant other, Douglas Ruckle. Tr. 1083 (citing Tr. 279-86). Mr. Ruckle opined Plaintiff is unable to mop or vacuum due to pain and numbness in the neck, shoulder, back, and hand. Tr. 282. The ALJ found Plaintiff's similar symptom complaints were not credible. Tr. 1077-78. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina,* 674 F.3d at 1114*; see also Valentine*, 574 F.3d at 694. Here, because the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective complaints, and because the lay testimony of Douglas Ruckle was similar to Plaintiff's complaints, it also follows that the ALJ gave a germane reason for rejecting Mr. Ruckle's testimony.

Similarly, the ALJ properly rejected the other lay witness testimony for the same germane reason. For example, in January 2012 and June 2015, Douglas Ruckle again described neck, back, and hand pain. Tr. 333, 1405-08. Because this testimony essentially restated Plaintiff's properly rejected complaints, the ALJ gave a germane reason to reject it.

Likewise, Plaintiff's son, Craig Ruckle, opined in an undated letter and in February 2015 that Plaintiff is unable to perform most household tasks and doing so causes excruciating pain. Tr. 1412, 1492. Last, the testimony of Plaintiff's friend, Linda Uptain, is also similar to Plaintiff's properly discounted complaints.

Tr. 334, 1413-14 (in January 2012 and February 2015, Ms. Uptain stated Plaintiff's activities bring on "multiple days of intense pain").

All are similar to Plaintiff's properly discredited complaints. If an ALJ gives reasons for rejecting a claimant's testimony regarding symptoms that were equally relevant to the similar testimony of a lay witnesses, that would support a finding that the lay testimony was similarly not credible. *Molina,* 674 F.3d at 1114-15. Significantly, Plaintiff has not identified any limitation in the lay testimony beyond what Plaintiff herself described. This Court finds the ALJ's reason for giving the lay testimony little weight was germane.

**C. Step Two**

Plaintiff contends the ALJ should have found that she suffers from medically determinable impairments involving her right hand and upper extremity sufficient to meet the step two standard, based on records from Dr. Shors, Douglas Burns, M.D., in November 2004 (citing Tr. 494), and others, as discussed *supra*. ECF No. 20 at 16-17. Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevents her from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A). However, step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (1996). "Thus,

applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

For context, the Court observes the ALJ noted that in early 2004, Plaintiff reported neck pain that radiated into her right arm. Tr. 1066 (citing Tr. 480). The ALJ found that in June 2004, Plaintiff underwent a C5-C6 discectomy and fusion. Tr. 1066 (citing Tr. 485). Plaintiff cites several records after this surgery purporting to establish a severe impairment at step two. First, in November 2004, about five months after surgery, examining physician Dr. Burns noted Plaintiff described a complicated constellation of pain, numbness and weakness, with "no clear dermatomal pattern." He ordered further testing. Tr. 494. This does not establish a severe impairment as it is based on Plaintiff's unreliable description, and further testing was required. Second, Plaintiff cited records showing that on September 14, 2011, bilateral hand imaging results showed no evidence of arthritis and an impression of *minimal* degenerative arthropathy in the right thumb (emphasis added). Tr. 948. "Minimal" does not equate to severe. Third, in October 2012, treating physician Dr. Shors noted a positive Tinel's test and assessed the need for left carpal tunnel release. Tr. 1620. However, this condition

was remedied when Dr. Shors performed left carpal tunnel release in November 2012, Tr. 1701-02, and the ALJ noted Plaintiff reported improvement in January 2013. Tr. 1075 (citing Tr. 1680, 1683). Fourth, in August 2014, treating physician Dr. Carlin opined Plaintiff needed surgery to remove multiple ganglion cysts and noted no evidence of inflammatory arthritis. Tr. 1638-39. Cysts are not a condition that would last the requisite twelve months.[6] Fifth, an ultrasound of Plaintiff's left wrist dated August 7, 2014, noted limited range of motion in wrists. Tr. 1642. This does not establish a severe impairment. Sixth, in August 2015, Dr. Shors noted recurrent right thumb trigger finger, *possible* inflammatory arthritis (emphasis added). Tr. 1745. Nor does this establish a severe impairment. Plaintiff's cited records are insufficient to establish significant limitations on work-related activity. Thus, the ALJ reasonably found Plaintiff's conditions related to her right hand and upper extremity are not severe impairments because they cause no more than minimal limitations in Plaintiff's ability to perform work activity. Tr. 1082.

---

[6] *See Smolen,* 80 F.3d at 1280 (citing 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .has lasted or can be expected to last for a continuous period of not less than 12 months[.]")).

Furthermore, even if the ALJ should have determined one of the conditions identified by Plaintiff is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout*, 454 F.3d at 1055; *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that any of the conditions mentioned creates limitations not already accounted for in the RFC. Thus, the ALJ's step two finding with respect to her right hand and upper extremity impairments is legally sufficient.

**D. Listing 1.04A**

Plaintiff contends the ALJ erred by finding that Plaintiff did not meet the requirements of Listing 1.04A – disorders of the spine. ECF No. 20 at 17; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 404.1525(d). The claimant bears the burden of establishing she meets a listing.

*Burch*, 400 F.3d at 683. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii).

In order to meet Listing § 1.04A, a claimant must establish (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; as well as the following severity requirements: (2) limitations of motion of the spine; and (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *Gnibus v. Berryhill*, 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was met) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")). Further, Plaintiff must establish the impairment(s) satisfies the 12-month durational requirement. *Gnibus*, 2017 WL 977594, at *7 (internal citations omitted); *see also Stewart v. Colvin*, 674 F.App'x 634, 635 (9th Cir. 2017) (Plaintiff failed to carry his burden of establishing that he met all of the criteria for Listing 1.04A).

In support of her contention that she meets Listing 1.04A, Plaintiff cites the ALJ's finding that Plaintiff suffered degenerative disc disease in her cervical, thoracic, and lumbar spine. ECF No. 20 at 17 (citing Tr. 1066). Plaintiff contends

that because the record showed evidence of nerve root compression from neuroanatomic distribution of pain (citing Tr. 346-47, 1649); limitations in the motion of her spine (citing Tr. 1417, 1623); motor loss (citing Tr. 358); (difficulties typing and writing); reflex loss (citing Tr. 1430, 617-18); and a single positive straight-leg test (citing Tr. 1430, 1692), the ALJ should have found she met Listing 1.04A. The ALJ properly relied on the medical opinions of two reviewing physicians who opined that Plaintiff did not meet a Listing, the medical evidence as a whole, and Plaintiff's reported daily activities that are inconsistent with severe limitations, when the ALJ found no Listing was met.

First, the ALJ largely credited the opinions of reviewing physicians Dr. Turner, in 2008, Tr. 1080 (citing Tr. 393-400, 560), and Dr. Hutson,[7] who testified at the hearing on January 10, 2012 (citing Tr. 82-93). In February 2008, Dr. Turner reviewed the record and assessed an RFC for a range of light work, indicating that no Listing was met. Tr. 560. At the January 2012 hearing, Dr.

_____

[7]As noted with respect to specific contentions, the ALJ also relied in part on some of the opinions of treating hand surgeon Dr. Shors, Tr. 1079 (citing Tr. 1631-32, 1634), and primary physician Dr. Anderson, Tr. 1079 (citing Tr. 365) (Dr. Anderson's May 2006 opinion that Plaintiff does tend to exaggerate on most things).

Hutson testified that Listing 1.04 was not met.  Tr. 87-88.

The opinion of a nonexamining physician may sometimes serve as substantial evidence, if that opinion is supported by other evidence in the record and consistent with it.  A*ndrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, the ALJ found that the objective medical evidence does not establish that Plaintiff meets Listing 1.04.  With respect to right upper extremity symptoms, the ALJ found the objective evidence does not support a Listed impairment.  Tr. 1079-80.  For example, the evidence showed treating hand surgeon Dr. Shors denied Plaintiff's request that she certify Plaintiff was unable to do desk work for eight hours a day due to her right hand symptoms.  Consistent with the medical evidence, Dr. Shors refused, and stated that doing desk work would be helpful for Plaintiff's hands, not problematic.  Tr. 1079 (citing Tr. 1631-32).  In February 2012, treating physician Dr. Friedman found normal strength in both upper extremities.  Tr. 1075 (citing Tr. 1699).  In October 2013, treating physician Brian Strachan, M.D., assessed strength as 5/5 throughout bilateral upper extremities.  Tr. 1075 (citing Tr. 1662).  The ALJ is correct that the evidence does not support a Listed impairment.

The ALJ further found that the objective medical evidence revealed little to no abnormality in the lumbar spine, and there was no abnormality on imaging to explain Plaintiff's report of radicular pain.  Tr. 1076 (citing Tr. 1004) (August

2011 imaging showed mild degeneration and bulging L5-S1 disc and mild facet arthrosis at the Ls-4, L4-5, and L5-S1 levels); (citing Tr. 1520) (March 2012 imaging showed mild spondylosis). This objective evidence supports the ALJ's finding that Plaintiff did not meet a Listed impairment.

Similarly, the ALJ noted that objective evidence does not support Plaintiff's allegations with respect to neck and back pain. Tr. 1076. For example, the ALJ found that multiple specialists examined Plaintiff for complaints of pain that radiated into her right arm. Tr. 1076. The ALJ further found that imaging revealed a stable cervical spine, with no abnormalities to explain Plaintiff's pain complaints. Tr. 1076 (citing *e.g.,* Tr. 497-98) (in 2005, treating physician Peter Ward, M.D., noted no evidence of neurologic impairment and recommended continued conservative treatment only); (citing Tr. 509, 511) (in June and July 2007 no structural anatomic abnormalities are seen that would benefit from surgical intervention); (citing Tr. 1613) (in June 2013, treating physician Dr. Stoilova reviewed an October 2012 lumbar MRI and opined there was no significant central canal or neural foraminal stenosis; moreover, no definitive etiology for right L5 radiculopathy was evident). This objective evidence further supports the ALJ's step three determination that no Listing was met.

Significantly, the ALJ also found that Plaintiff's activities are inconsistent with disabling limitations such as those contained in the Listings. Tr. 1077-78. An

ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan,* 169 F.3d at 601-02. Here, the ALJ noted, for instance, that Plaintiff reported she does all of the shopping for her household, assists in caring for two horses, takes care of household chores, cares for and homeschools her son, and is able to walk one mile and went on a mile-long hike. Tr. 1078 (citing Tr. 248-49) (Plaintiff's Function Report noted she cares for and homeschools son); (Tr. 571) (July 2008 report of activities to Dr. Anderson included ability to walk one mile); (Tr. 928) (in August 2011 Plaintiff told a mental health provider she went on a mile-long hike); (Tr. 1563) (in September 2014, Plaintiff told Dr. Schmitt she takes care of household chores); (Tr. 1359, 1367) (Plaintiff reported to an investigator in February 2015 that she shops, cares for horses, and does household chores). Further, the ALJ found that, inconsistent with Plaintiff's allegations, the investigator observed no serious problem regarding gait, bending, reaching, or grasping when he observed Plaintiff enter her car and drive away. Tr. 1078 (citing Tr. 1364-65). The ALJ's step three finding that Plaintiff did not meet a Listing is supported by Plaintiff's functioning.

The ALJ accepted Dr. Turner's and Dr. Hutson's opinions that Plaintiff did not meet a Listing, Tr. 1080, a finding that is fully supported by the objective evidence and by Plaintiff's actual functioning. Plaintiff merely cites isolated

medical findings and contends that these show her condition meets Listing 1.04A. However, Plaintiff fails to meet her burden of establishing that a Listing was met.

**E. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims. ECF No. 22 at 18-21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas,* 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible." Tr. 1074.

### 1. Lack of Objective Evidence

First, the ALJ found that the objective evidence is not consistent with and does not support many of Plaintiff's symptom claims. Tr. 1074-76. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 46

degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ set out, in detail, the medical evidence regarding Plaintiff's impairments, and ultimately concluded that her allegations were inconsistent with the medical evidence. Tr. 1079-80. The ALJ found, for example, that treatment notes generally showed unremarkable clinical findings regarding a back impairment, including largely normal findings regarding gait, range of motion, and lower extremity strength. Tr. 1080 (citing Tr. 816) (in November 2010, treating physician Dr. Schmitt noted no gait disturbance); (citing Tr. 793) (in July 2011, Dr. Schmitt opined balance and gait were intact, no motor weakness noted); (citing Tr. 1623) (in October 2012, treating physician Paul Choi, M.D., noted lower extremity strength was 5/5 bilaterally); (citing Tr. 1694) (in May 2012, treating physician Dr. Friedman noted lower extremity strength was normal); (citing Tr. 1699) (in February 2012, Dr. Friedman noted strength was 5/5 in all extremities). The ALJ additionally found that most of Plaintiff's records from 2013 to 2015 were for primary complaints *other than* back pain. Tr. 1080 (citing *e.g.,* Tr. 1626) (in October 2012, treating physician Dr. Heit noted a long history of complaints of left

foot pain) (emphasis added); (citing Tr. 1629) (in October 2012, treating physician Julie Hodapp, M.D. saw Plaintiff for complaints of pain and tingling in all fingers in left hand); (citing Tr. 1631) (in January 2015, treating physician Dr. Shors saw Plaintiff for complaints of hand pain).

The ALJ further found that Plaintiff's complaints of needing to recline or lie down during the day due to back pain were rarely if ever reported to treatment providers, lessening the credibility of such complaints. Tr. 1080 (citing generally treatment records at Tr. 1612-1728). The failure to report symptoms to treatment providers is a legitimate consideration when determining the legitimacy of those complaints. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ found Plaintiff's complaints exceeded and were not supported by objective and physical exam findings. The ALJ also considered Plaintiff's failure to report symptoms to treatment providers. This was a specific, clear and convincing reason to discount Plaintiff's testimony.

*2. Activities of Daily Living*

The ALJ found that Plaintiff's activities were inconsistent with the severe limitations Plaintiff alleged. Tr. 1078-79. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair,* 885 F.2d at 603

(daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Here, the ALJ found Plaintiff's activities undermine her credibility to the extent they contradict claims of a totally debilitating impairment. The ALJ observed that Plaintiff told the investigator in February 2015 that she did all of the shopping for her household. Tr. 1078 (citing Tr. 1359). Plaintiff reported to the investigator that she drove her sons and some friends when they needed transportation. Tr. 1077-78 (citing Tr. 1359) (Plaintiff's statements to the investigator regarding her ability to drive). Plaintiff also said she assisted in taking care of two horses. Tr. 1078 (citing Tr. 1359). Plaintiff has also reported that she takes care of household chores. Tr. 1078 (citing Tr. 1563) (in September 2014, Plaintiff told treating physician Dr. Schmitt that she is able to get her housework and other chores done); (citing Tr. 1367) (Plaintiff told the investigator she stayed

busy taking care of the house and the two horses).  As the ALJ found, Plaintiff's April 2007 Function Report indicated that she cared for her young son, including homeschooling him.  Tr. 1078 (citing Tr. 248-49).  Further, Plaintiff reported that she walked a couple of days a week, Tr. 248, and in July 2008, Plaintiff told treating physician Dr. Anderson she was able to walk one mile.  Tr. 1078 (citing Tr. 571).  On August 30, 2011, Plaintiff even reported to mental health treatment provider Dawn Petre, M.Ed. that she went on a one-mile hiking trip.  Tr. 1078 (citing Tr. 928).  The evidence of Plaintiff's daily activities in this case may be interpreted more favorably to the Plaintiff, however, such evidence is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch,* 400 F.3d at 679.  Here, Plaintiff's daily activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's allegations of disabling functional limitations.  Ultimately, the record supports that Plaintiff's daily activities "contradict claims of a totally debilitating impairment."  *Molina,* 674 F.3d at 1112-13 (internal quotation marks and citations omitted).  The ALJ reasonably determined that Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms.  This was a specific, clear and convincing reason to discount Plaintiff's testimony.

*3. Evidence of Exaggeration/Secondary Gain*

The ALJ noted that evidence of symptom exaggeration or secondary gain erodes the credibility of Plaintiff's allegations. Tr. 1079. The tendency to exaggerate is a permissible reason for discounting a Plaintiff's credibility. *See Tonapetyan*, 242 F.3d at 1148 (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work); *see also Thomas*, 278 F. 3d at 959 (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible). Similarly, evidence of motivation to obtain social security benefits may be considered in making a credibility determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ noted that examining psychologist Dr. Toews reported in January 2008 that Plaintiff said that she would scream in pain if she had to write anything. Tr. 1079 (citing Tr. 537). However, the ALJ pointed out, Dr. Toews noted that Plaintiff was able to complete the information forms in an average amount of time, and Dr. Toews made no mention of Plaintiff screaming in pain as she did so. Tr. 1079 (citing Tr. 541). The ALJ further found that Dr. Toews noted that Plaintiff exhibited excessive audible and physical pain behavior during the evaluation, and

was loud and quite dramatic. Tr. 1079 (citing Tr. 537) (noting a significant amount

of overt pain behavior); (citing Tr. 541) (exhibited excessive audible and physical

pain behavior . . . was loud and quite dramatic). At the same time, the ALJ notes,

Dr. Toews found that Plaintiff was cognitively intact. Ultimately, Dr. Toews'

diagnoses included possible symptom exaggeration-secondary gain. Tr. 1079

(citing Tr. 543) (Dr. Toews indicated a rule out diagnosis of symptom

exaggeration-secondary gain).

Similarly, the ALJ found that Plaintiff asked treating hand surgeon Dr. Shors

to write a statement that Plaintiff was disabled because she could not use her hand

eight hours a day. Tr. 1075 (citing Tr. 1631). As the ALJ observed, Dr. Shors

refused and instead opined that using her hand would in fact be beneficial to

Plaintiff's condition. Tr. 1075 (citing Tr. 1632).

Because an ALJ may account for a Plaintiff's exaggeration of symptoms

during an evaluation and motivation for secondary in assessing credibility, this was

a specific, clear and convincing reason to discount her testimony.

### 4. Reason Employment Ended

Next, the ALJ found that Plaintiff's unemployment during at least part of the

relevant period was due to factors other than Plaintiff's alleged impairments. Tr.

1078. When considering a claimant's contention that she cannot work because of

her impairments, it is appropriate to consider whether the claimant has not worked

for reasons unrelated to his alleged disability.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (the ALJ properly discounted claimant's credibility based, in part, on the fact that the claimant's reason for stopping work was not his disability).  Here, the ALJ noted Plaintiff reported in her Functioning Report that she homeschooled her son because she believes in it, a factor that "would interfere with working but is unrelated to disability."  Tr. 1078.  Thus, Plaintiff was not working because she chose to homeschool her son, not because of her impairments.  This was a clear and convincing reason to discredit Plaintiff's testimony.

## F. Recusal/Full and Fair Hearing

Plaintiff contends the ALJ should have recused herself because, Plaintiff alleges, the ALJ requested an investigation by the CDIU.  ECF No. 20 at 18-21.  Plaintiff asserts that the CDIU report indicates that Plaintiff was referred to the CDIU because ODAR found inconsistencies in the record.  Tr. 1062.  From this, the ALJ stated, Plaintiff's counsel inferred that the ALJ sent the referral, and because the report indicated that ODAR found inconsistencies, Plaintiff alleged the ALJ had already made a finding regarding the claimant's credibility and was, therefore, biased.  Tr. 1062 (referring to hearing testimony at Tr. 1101-03).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 53

Moreover, Plaintiff contends she was deprived of the right to a full and fair hearing, because, she argues, the ALJ's actions were biased.  ECF No. 20 at 18-21.

ALJs who decide social security claims are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Rollins*, 261 F.3d at 857-58 (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)).  The presumption can be rebutted by showing a conflict of interest or another specific reason for disqualification.  *Verduzco*, 188 F.3d at 1089.  Expressions of sarcasm, impatience, dissatisfaction, annoyance, and even anger, "that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias.  *Rollins*, 261 F.3d at 858 (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).  A claimant asserting bias must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins*, 261 F.3d at 858 (quoting *Liteky*, 510 U.S. at 551).  The burden of establishing a specific reason for disqualification is on the party making the assertion.  *Schweiker*, 456 U.S. at 196.

Plaintiff contends the ALJ improperly prejudged Plaintiff's credibility and should have referred the case to another ALJ for that reason.  ECF No. 20 at 18 (citing Tr. 1359) ("The claim on [Plaintiff] was referred to the Cooperative Disability Investigations Unit (CDIU) after the Office of Disability Adjudication

and Review (ODAR) found inconsistencies in [Plaintiff's] allegations and presentations throughout the file.").

The ALJ correctly observed that an ALJ may disqualify herself if she believes her participation in the case would give the appearance of impropriety. Tr. 1062 (citing HALLEX I-2-1-60). These instances include, for example, sharing an acquaintance with, but not knowing, the claimant, or when the ALJ has particular knowledge about the claimant from an extrajudicial source. The ALJ did not have these as proper bases to grant recusal. Tr. 1062.

The claimant raised a similar claim in *Valentine,* 574 F. 3d at 690. The Court held that "ALJ's are presumed to be unbiased." Moreover, prejudging does not establish bias: "Valentine does not allege that the ALJ was biased against him. Instead, he merely suggests that the ALJ had prejudged his case in some way. We can find no legal authority for the proposition that general preconceptions that do not amount to bias violate the Due Process Clause." *Valentine*, 574 F.3d at 690. Here, Plaintiff similarly alleges that the ALJ "prejudged" Plaintiff's credibility and this somehow deprived her of a full and fair hearing. However, this general assertion does not establish or amount to a claim of actual bias or deprivation of due process by the ALJ. Accordingly, Plaintiff's allegation is without merit.

In addition, Plaintiff contends the CDIU investigation was unreasonable. Plaintiff contends the investigating agent used "deceptive tactics" that shock the

conscience." ECF No. 22 at 9-11. However, the authority Plaintiff cites does not support her contention.

First, Plaintiff cites *Wyman v. James*, 400 U.S. 309, 318-23 (1971). There, the Supreme Court considered a home visit that was required as a condition for assistance under the Aid to Families of Dependent Children (AFDC) program. The Court held that even if such a visit by a caseworker possessed some characteristics of a search in a traditional criminal law sense, the visit did not fall within the Fourth Amendment's proscription against unreasonable searches and seizures. *Wyman*, 400 U.S. at 317-18. Notably, the home visitation which state statutes prescribed as a condition for assistance under the AFDC program was a reasonable administrative tool and served a valid and proper administrative purpose for dispensation of the program. *Wyman*, 400 U.S. at 318-19 (observing that the agency is fulfilling a public trust). The Court found the home visits are not a search, nor are they unreasonable; the home visit is not a criminal investigation, does not equate with a criminal investigation, and is not in aid of any criminal proceeding; accordingly criminal law protections are not applicable. *Wyman,* 400 U.S. at 317-18, 323-24.

Similarly, the investigator's actions in this case did not involve a search, were not unreasonable, and were not conducted in aid of any criminal proceeding. Similar to *Wyman,* in this case, utilizing the administrative tool of an investigator

does not trigger criminal law protections.  And, importantly, like *Wyman*, the agency here is fulfilling a public trust:  "The State, working through its qualified welfare agency, has appropriate and paramount interest and concern in seeing and assuring that the intended and proper objects of that tax-produced assistance are the ones who benefit from the aid it dispenses."  *See Wyman*, 400 U.S. at 318-19.  Here, the SSA is similarly fulfilling a public trust to assure that the intended and proper objects of tax-produced assistance are the ones who benefit from the aid it dispenses.

The only other authority Plaintiff cites is an unpublished case that aids Plaintiff even less.  ECF No. 22 at 9 (citing *Elmore v. Colvin*, 617 F.App'x 755, 757 (9th Cir. 2015) (unpublished)).  In *Elmore,* the claimant argued that the ALJ erred in relying on evidence related to the CDIU investigation.  *Elmore*, 617 F.App'x at 757.  Specifically, Elmore asserted that the CDIU's use of a pretext interview was both inconsistent with the broad remedial purpose of the Social Security Act and the type of arbitrary government action that "shocks the conscience."  *Id*.  The Court held that this argument had "no merit," and pointed out that the Social Security Act expressly authorizes the Commissioner to "conduct such investigations and other proceedings as the Commissioner may deem necessary or proper."  *Id*. (citing 42 U.S.C. § 405(b)(1)); *see also Fair,* 885 F.2d at 603 ("The Disability Insurance and Supplemental Security Income programs are

intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute.").  The *Elmore* Court explicitly found that the tactics used were neither "shocking" nor arbitrary.  *Elmore,* 617 F.App'x at 757 (citing *Shaw v. Winters,* 796 F.2d 1124, 1125 (9th Cir .1986) ("Government agents are permitted to assume false identities in order to gain the confidence of their targets.")).  The *Elmore* court concluded its discussion by citing the clear policy behind investigative techniques: there is nothing nefarious about ensuring that only deserving claimants receive benefits.  *Elmore,* 617 F.App'x at 757.

Here, Plaintiff contends the CDIU agent entered Plaintiff's home using a ruse and this was a deceptive practice such that "the report itself should be excised from the record."  ECF No. 22 at 9-10.  As in *Elmore*, there was nothing nefarious about the CDIU investigating to ensure that only deserving claimants receive benefits pursuant to the Social Security Act.  Plaintiff's contention is without merit.

In sum, the ALJ carefully considered the voluminous record and weighed the contradictory evidence and opinions, including the lay testimony and Listing evidence; determined the severe impairments at step two; assessed Plaintiff's credibility; considered the investigator's report; was not required to recuse herself; and provided Plaintiff a full and fair hearing.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 58

**CONCLUSION**

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

IT IS ORDERED:

1. Plaintiff's motion for summary judgment (ECF No. 20) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 21) **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and CLOSE THE FILE.

DATED this September 21, 2017.

s/ Mary K. Dimke
MARY K. DIMKE
U.S. MAGISTRATE JUDGE